1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BOBBY LEE KINDER, JR., | ) | 1:10-cv-01789 LJO GSA |
| Plaintiff, | ) | |
| v. | ) | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S COMPLAINT** |
| MERCEDS COUNTY, MERCEDS OUTPATIENT CLINIC, MERCEDS PAROLE OFFICE, MERCEDS COURTHOUSE, MR. ROCHESTER, Parole Officer, et al, | ) | (Document 4) |
| Defendants. | ) | |

Plaintiff Bobby Lee Kinder, Jr. ("Plaintiff"), appearing pro se and proceeding in forma pauperis, filed the instant complaint alleging damages for personal injuries against Merced[1] County, the Merced Outpatient Clinic, the Merced Parole Office, the Merced Courthouse, Parole Officer Rochester and Doctor Luckman ("Defendants").  Plaintiff seeks "release" and "a Social Security Number" so that he may obtain identification and Supplemental Security Income or "S.S.I."  (Doc. 4.)

---

[1]While the caption above references the spelling employed by Plaintiff, the Court will hereafter properly refer to the various Merced area entities in the singular.

1

**DISCUSSION**

A.    *Screening Standard*

Pursuant to Title 28 of the United States Code section 1915(e)(2), the Court must conduct an initial review of the complaint for sufficiency to state a claim.  The Court must dismiss a complaint or portion thereof if the Court determines that the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . .."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  While legal conclusions can provide a framework of a complaint, they must be supported by factual allegations. *Iqbal*, 129 S.Ct. at 1950.  While factual allegations are accepted as true, legal conclusion are not.  *Iqbal* at 1949.

In reviewing a complaint under this standard, the Court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. V. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976), construe the pro se pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

A pleading may not simply allege a wrong has been committed and demand relief.  The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the

1  "grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); *Yamaguchi v.*

2  *United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997).

3  **B.**     ***1983 Actions***

4  The Civil Rights Act under which this action was filed provides as follows:

5          Every person who, under color of [state law] . . . subjects, or causes to be

6  subjected, any citizen of the United States . . . to the deprivation of any rights,
   privileges, or immunities secured by the Constitution . . . shall be liable to the
   party injured in an action at law, suit in equity, or other proper proceeding for

7  redress.

8  42 U.S.C. § 1983.  Thus, to state a claim under Title 42 of the United States Code section 1983,[2]

9  a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant

10  deprived him of rights secured by the Constitution or federal law.  *Long v. County of Los*

11  *Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

12  Moreover, section 1983 requires that there be an actual connection or link between the

13  actions of defendant and the deprivation allegedly suffered.  *See Monell v. Department of Social*

14  *Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit Court of

15  Appeals has held that "a person 'subjects' another to deprivation of constitutional right, within

16  the meaning of section 1983, if he does an affirmative act, participates in another's affirmative

17  acts or omits to perform an act which he is legally required to do that causes the deprivation of

18  which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

19  **C.**     ***Plaintiff's Allegations***

20  As a preliminary matter, Plaintiff has failed to state with specificity which constitutional

21  or federal rights Defendants have purportedly violated.  Plaintiff's complaint asserts four separate

22  claims against various Defendants.  The events that form the basis of Plaintiff's complaint

23  occurred in April and May of 2008.  The Court will address each in turn.

24

25

26          [2]All further statutory references are to Title 42 of the United States Code unless otherwise

27  indicated.

28                                    3

### 1.   Defendant Rochester/Merced Parole Office

Plaintiff complains that "Mr. Rochester," his parole officer in Merced County failed to provide him proper assistance in light of the fact Plaintiff was homeless and without employment.  According to Plaintiff, he advised Defendant Rochester that he did not have any identification,[3] and Defendant Rochester told Plaintiff "to forget a real I.D. and to take a parole picture I.D. to identify [himself] and go check on Welfare."  (Doc. 4 at 3.)  Additionally, Plaintiff complains he was not permitted to attend funeral services in Inglewood, California, for his younger brother Dwight Jefferson, who was murdered in Cerritos, California.  (Doc. 4 at 3, 5.) Finally, Plaintiff asserts that he and his girlfriend, accompanied by her two children, met with Defendant Rochester about her son's drug use.  They requested her son be tested.  Plaintiff complains that Defendant Rochester failed to "tell the courts [about his girlfriend's son's drug use] during" their incarceration.  (Doc. 4 at 5.)  Plaintiff asserts his complaint against Defendant Rochester is for "his lack of responsibility."  (Doc. 4 at 5.)

First, Defendant Rochester's "lack of responsibility" does not state a claim upon which relief can be granted.  In fact, Plaintiff's assumption that Rochester, in his capacity as Plaintiff's parole officer, was required to help him obtain a Social Security number is frivolous.  Plaintiff does not have a constitutional or federal right to a particular form of identification, or to Social Security benefits.  *See, e.g.,* 42 U.S.C. § 1382c(a)(3)(A).  Neither is it Defendant Rochester's "responsibility" to permit Plaintiff to travel to Southern California for a funeral; that decision falls within Defendant Rochester's discretion as a parole officer.  A person's criminal conduct within a state "necessarily qualifie[s] his right thereafter to travel interstate." *Jones v. Harris*, 452 U.S. 412, 421, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981); *see also Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) (parolees' right to travel is extinguished for the entire balance of their sentences); *Bogley v. Harvey*, 718 F.2d 921, 923 (9th Cir. 1983).

---

[3]The Court notes that Plaintiff's complaint states that he "received a letter from Arnold Schwarzenegger stating that [his] CD disk with all of [his] information came up missing so [he did not] know what to do."  (Doc. 4 at 3.)

1    Courts within the Ninth Circuit have held that there is no constitutionally protected

2    liberty interest in attending funerals. *See, e.g., McCowen v. Clark*, 2009 U.S. Dist. LEXIS 69704

3    at *8 (E.D. Cal. Aug. 10, 2009) (The plaintiff did not have a protected liberty interest in receiving

4    leave to attend his mother's funeral); *Morongo Tribesman v. Cal. Corr. Peace Officers Assoc.*,

5    2009 U.S. Dist. LEXIS 74734, at *6 (C.D. Cal. Aug. 21, 2009) (Plaintiff's request for money

6    damages "due to the failure to allow him to attend the funeral of his grandmother has no statutory

7    or constitutional basis"); *Devers v. Paneburn*, 1998 U.S. Dist. LEXIS 17126, at *6 (N.D. Cal

8    Oct. 26, 1998) ([S]tate hospital officials' determination that allowing plaintiff to attend the

9    funeral could pose a security problem is rational, and their need to protect the welfare of those in

10   their custody is a legitimate government purpose").

11   To the extent Plaintiff complains about evidence that should have been a part of his state

12   court criminal proceeding or proceedings, his sole remedy is by way of habeas corpus. *See*

13   discussion, *post*.

14   Moreover, government officials enjoy qualified immunity from civil damages unless their

15   conduct violates "clearly established statutory or constitutional rights of which a reasonable

16   person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the

17   issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the

18   party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional

19   right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the

20   next step is to ask whether the right was clearly established. *Id*. The inquiry "must be

21   undertaken in light of the specific context of the case, not as a broad general proposition . . .." *Id*.

22   "[T]he right the official is alleged to have violated must have been 'clearly established' in a more

23   particularized, and hence more relevant, sense:  The contours of the right must be sufficiently

24   clear that a reasonable official would understand that what he is doing violates that right."

25   *Saucier*, 533 U.S. at 202 (citation omitted). Qualified immunity protects "all but the plainly

26

27

28                                              5

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Thus, here, parole officer Rochester is entitled to immunity from damages because his conduct has not violated a clearly established statutory or constitutional right to Plaintiff is entitled. *Harlow v. Fitzgerald*, 457 U.S. at 818.

Additionally, the Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. *Brooks v. Sulphur Springs Valley Elec. Co.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); *see also Seminole Tribe of Fla. v. Florida*, 116 S.Ct. 1114, 1122 (1996); *Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677 (9th Cir. 1991). The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant. *See Natural Resources Defense Council v. California Dep't of Tranp.*, 96 F.3d 420, 421 (9th Cir. 1996); *Brooks*, 951 F.2d at 1053; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989). "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief is legal or equitable in nature." *Brooks*, 951 F.2d at 1053.

The Eleventh Amendment's bar to actions against states and their entities in federal courts provides further grounds to recommend dismissal of the complaint. Because the parole office in Merced is a state agency, rather than a county or municipal agency, the Merced area office of the California State Parole Board is immune from this suit.

Accordingly, this Court will recommend dismissal of Plaintiff's frivolous claim.

### 2.    Dr. Luckman/Merced Outpatient Clinic

Plaintiff complains Dr. Luckman at the Merced Outpatient Clinic failed to provide him assistance in obtaining Social Security benefits, although Dr. Luckman was aware that he had a history of depression and schizophrenia. (Doc. 4 at 5.)  Additionally, Dr. Luckman told Plaintiff

6

to go pick up his medication, however, while she provided him with an address, she did not

provide a bus pass or directions.  Consequently, Plaintiff got lost and "couldn't [find] the

medicine place." (Doc. 4 at 5.)  Further, Dr. Luckman did not offer Plaintiff any assistance in

obtaining Social Security benefits; he claims she was aware of the fact he did not have a Social

Security Number nor any identification.  Finally, Plaintiff assigns fault to Dr. Luckman for

failing to "take [his] statement or my mental health crises into consideration when [he] told her

and the doctor [he felt] paranoid." (Doc. 4 at 5.)  He claims he began carrying a small kitchen

steak knife as a result of the paranoia, and that by carrying the knife he was later charged with a

"firearm" violation of some kind.  Although unclear, it appears he believes Dr. Luckman and the

Merced Outpatient Clinic have falsely imprisoned him as a result the aforementioned actions.

(Doc. 4 at 5-6.)

First, Plaintiff does not have a constitutional or federal right to a bus pass or directions.

This claim is clearly frivolous.  Additionally, as previously indicated, Plaintiff does not have a

constitutional right to receive Social Security benefits.  42 U.S.C. § 1382c(a)(3)(A).  Therefore,

the fact Dr. Luckman and/or the Merced Outpatient Clinic did not assist him in this regard is

frivolous.

Next, under California law, false imprisonment is the "'unlawful violation of the personal

liberty of another.'"  *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998)

(quoting *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 757 (1997)).  "The elements of a tortious

claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2)

without lawful privilege, and (3) for an appreciable period of time, however brief."  *Lyons v. Fire*

*Ins. Exchange*, 161 Cal.App.4th 880, 888 (2008) (internal citations omitted).

Here, it is frivolous to claim that Dr. Luckman and/or the Merced Outpatient Clinic have

violated Plaintiff's civil rights in any way.  Dr. Luckman's actions, even accepting Plaintiff's

version as true, do not amount to a nonconsensual, intentional confinement.  Plaintiff admits he

was carrying a steak knife on his person.  The fact that Dr. Luckman was aware of Plaintiff's

psychiatric problems does not equate to knowledge that Plaintiff would ultimately carry such a weapon, and Plaintiff does not so allege.  There is virtually no way that Plaintiff could establish any confinement by Dr. Luckman or the Merced Outpatient Clinic.  In fact, Plaintiff's confinement came at the hands of county and/or state law enforcement officials and Plaintiff's own criminal conduct.  In light of the obvious and insurmountable deficiencies related to the first element of the tort of false imprisonment, this Court will not address the remaining elements.  Plaintiff does not, and indeed can not, show Dr. Luckman had any hand in Plaintiff's current confinement.  Providing Plaintiff with an opportunity to amend his complaint in this regard would be futile.

Moreover, Dr. Luckman, like Mr. Rochester, would be entitled to qualified immunity.  *Harlow v. Fitzgerald*, 457 U.S. at 818.  Finally, because Plaintiff's claim is frivolous and any amendment would be futile, this Court will recommend dismissal of this action.

### 3.      Merced County Public Defender/Merced Courthouse

Next, Plaintiff asserts that the public defender assigned to represent him advised him to "take a deal with no evidence, no witness, transcripts screwed, police report screwed."  (Doc. 4 at 6.)  He claims he was "mentally stressed out," on medication at the time, and did not understand "what was going on."  (Doc. 4 at 6.)  He claims the public defender should have "had a pysche [*sic*] doctor at [the] court dates."  (Doc. 4 at 6.)  Further, the complaint appears to claim that the public defender should have challenged the nature of the charge: Plaintiff contends he should have been charged with a parole violation rather than "a new case."  (Doc. 4 at 6.)  Plaintiff complains this is false imprisonment because he is "in jail for something [he] didn't do."  (Doc. 4 at 6.)  Plaintiff also references another crime, to wit: "and as far as child abuse who did I hit?  The Mother is now free and admitted to woopen [*sic*] him . . . I didn't do [it], they say the mother wooped [*sic*] him but I choked him and kicked him?  No marks was found on him from me so why am I'm in jail?"  (Doc. 4 at 6.)  According to Plaintiff, he was "railroaded" because his

public defender told him he would "get 27 years" or more; he "got scared and took 6 years and 4 months."  (Doc. 4 at 7.)

Plaintiff has failed to state a cognizable claim.  Although the unnamed Merced County public defender was an attorney appointed by the court and paid by government funds, he was not acting under color of state law at the time of his legal representation.  It is well established that court appointed attorneys are not state actors.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (public defender who is performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding is not acting under color of state law); *Miranda v. Clark County of Nevada*, 319 F. 3d 465, 468 (9th Cir. 2003) (upholding dismissal of a complaint on the basis that public defender was not acting on behalf of the county for purposes of § 1983 when defendant's function in his role as plaintiff's attorney was to represent plaintiff's interests, not the interests of the state).  As such, the public defender did not act under color of state law and Plaintiff's complaint fails state a claim under section 1983.  Therefore, it will be recommended that this action be dismissed.

### 4.    Merced County

Plaintiff claims that on the advice of his parole officer, he went to the Merced welfare office.  He received food stamp assistance initially, but then was advised by a social worker that there were "2 Social Security Numbers in the computers" matching his name, and therefore, he was "cut off of welfare" assistance. (Doc. 4 at 7.)  Plaintiff states in his complaint that Merced County "told me to call the Social Security office so I called," however, Plaintiff alleges the County should not have sent him there "knowing it wouldn't work," and that their actions made him more paranoid.  He claims he could have "committed a crime or gotten killed just because of the mental stress." (Doc. 4 at 7-8.)  Plaintiff further claims he was not "treated like an American citizen" and that it caused him to attempt suicide.  He believed he was "going to be kidnapped [*sic*] or murdered or something." (Doc. 4 at 8.)

Section 1983 requires that there be an actual connection or link between the actions of defendant and the deprivation allegedly suffered.  *See Monell v. Department of Social Services*, 436 U.S. 658; *Rizzo v. Goode*, 423 U.S. 362.  The Ninth Circuit Court of Appeals has held that "a person 'subjects' another to deprivation of constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d at 743.

Plaintiff has named "Merced[] County" as a Defendant.  To the extent Plaintiff seeks to pursue a section 1983 claim, the complaint fails to allege a *Monell* claim against the County of Merced.  A local government unit may not be held liable for the acts of its employees under a respondeat superior theory.  *Monell*, 436 U.S. at 691; *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir. 1991), *cert. denied*, 502 U.S. 899 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate the alleged constitutional violation was the product of a policy or custom of the local governmental unit.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).

A "rule or regulation promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies *Monell*'s policy requirements." *Thompson*, 885 F.2d at 1443.  Official policy may derive from "a decision properly made by a local governmental entity's authorized decisionmaker – i.e., an official who possesses final authority to establish [local government] policy with respect to the [challenged] action." *Thompson*, 885 F.2d at 1443, internal quotation marks omitted.  "Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Thompson*, 885 F.2d at 1444.  "[O]fficial policy must be the moving force of the constitutional violation in order to establish the liability of a government body under §

1   1983." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), internal quotation marks omitted; *see*

2   *Rizzo*, 423 U.S. at 370-377 (general allegation of administrative negligence fails to state a

3   constitutional claim cognizable under § 1983).

4   Here, Plaintiff's complaint lacks any allegation of a policy or custom and resulting

5   constitutional violation to set forth a *Monell* claim.  In light of Plaintiff's allegations, the Court

6   cannot conceive of a scenario under which permitting Plaintiff leave to amend his complaint

7   would be anything other than futile.  Because Plaintiff has failed to state a claim upon which

8   relief may be granted, and because amendment would be futile, this Court will recommend

9   dismissal of this action.

10   **D.      *Habeas Corpus Is Proper Remedy***

11   To the degree Plaintiff's complaint can be interpreted to challenge the legality or duration

12   of his custody, or has attempted to raise a constitutional challenge which could entitle him to an

13   earlier release, Plaintiff is advised that his sole federal remedy is a writ of habeas corpus.

14   *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 1245-48 (2005); *Preiser v. Rodriguez*, 411

15   U.S. 475 (1973); *Young v. Kenny*, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090

16   (1991).  Moreover, when seeking relief for an allegedly unconstitutional conviction or

17   imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed

18   on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

19   make such determination, or called into question by a federal court's issuance of a writ of habeas

20   corpus, 28 U.S.C. § 2254."  *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994).  "A claim . . .

21   bearing that relationship to a conviction or sentence that has not been so invalidated is not

22   cognizable under § 1983."  *Id*. at 488.

23   Plaintiff seeks, at least in part, an early release from state custody.  As a result, his sole

24   federal remedy for those challenges concerning the legality or duration of his custody is to file a

25   writ of habeas corpus rather than a section 1983 complaint.

26

27

28                                                                11

1

### E.    *Court Related Defendants*

2        To the degree Plaintiff has named the "Merced Courthouse" as a Defendant, the Merced

3   Courthouse is not a proper party for it is not a "person" for purposes of section 1983.

4   Additionally, Plaintiff is advised that state court judges and prosecutors are immune from

5   liability under section 1983.  *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3df 916, 922 (9th

6   Cir. 2004) ("Absolute immunity is generally accorded to judges and prosecutors functioning in

7   their official capacities"); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (holding that

8   judges and prosecutors are immune from liability for damages under section 1983).  Thus, any

9   judge and/or prosecutor Plaintiff may have intended to identify as a defendant in this action is

10   entitled to immunity.

11

### F.    *Rooker-Feldman Doctrine*

12        To the extent that Plaintiff's complaint can be interpreted as a request that the Court

13   review the state court proceeding, this Court lacks jurisdiction to do so.  Federal courts lack

14   jurisdiction to review or modify state court judgments under the *Rooker-Feldman* doctrine.  *See*

15   *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149 (1923); *District of Columbia*

16   *Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303 (1983).  The *Rooker-Feldman*

17   doctrine is based on Title 28 of the United States Code section 1257 which grants the United

18   States Supreme Court jurisdiction to review decisions of the highest state courts for compliance

19   with the federal Constitution.  *See Rooker*, 263 U.S. 413, 44 S.Ct. 149; *Feldman*, 460 U.S. at

20   482, 103 S.Ct. 1303.  The doctrine provides that "lower federal courts do not have jurisdiction to

21   review a case litigated and decided in state court; only the United States Supreme Court has

22   jurisdiction to correct state court judgments."  *Gottfried v. Medical Planning Services*, 142 F.3d

23   326, 330 (6th Cir. 1998).  "This is equally true in constitutional cases brought under [42 U.S.C.]

24   § 1983, since federal courts must give 'full faith and credit' to the judicial proceedings of state

25   courts.'"  *Gottfried*, 142 F.3d at 330 (citing 28 U.S.C. § 1738).

26

27

28                                                    12

1    "Federal district courts lack subject matter jurisdiction to review such final adjudications

2    or to exclude constitutional claims that are 'inextricably intertwined with the state court's

3    [decision] in a judicial proceeding.'" *Valenti v. Mitchell*, 962 F.2d 288, 296 (3rd Cir. 1992)

4    (quoting *Feldman*, 460 U.S. at 483, n. 16).  This rule applies to "inextricably intertwined" with

5    final state court decisions, even if such "inextricably intertwined" claims were not raised in state

6    court.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. at 483-487 and n. 16;

7    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413; *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 937

8    (9th Cir. 1998) (holding the *Rooker-Feldman* doctrine is jurisdictional).  Thus, "a losing party in

9    state court is barred from seeking what in substance would be appellate review of the state

10   judgment in a United States District Court, based on the losing party's claim that the state

11   judgment itself violates the loser's federal rights."  *Johnson v. DeGrandy*, 512 U.S. 997,

12   1005-1006 (1994).

13          In sum, this Court does not have subject matter jurisdiction to review state court

14   proceedings.

15                            **FINDINGS AND RECOMMENDATIONS**

16          For the foregoing reasons, the Court HEREBY RECOMMENDS that this action be

17   DISMISSED WITHOUT LEAVE TO AMEND.

18          These findings and recommendations will be submitted to the Honorable Lawrence J.

19   O'Neill pursuant to the provisions of section 636(b)(l).  Within thirty (30) days after being served

20   with these findings and recommendations, the parties may file written objections with the Court.

21   The document should be captioned "Objections to Magistrate Judge's Findings and

22   Recommendations."  The parties are advised that failure to file objections within the specified

23   time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153

24   (9th Cir. 1991).

25

26          IT IS SO ORDERED.

27

28                                            13

1   Dated:    **November 1, 2010**                        /s/ **Gary S. Austin**
2                                                    UNITED STATES MAGISTRATE JUDGE

14